THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    v.

**MARIA TRINI MENENDEZ, ET AL.,**

    **Defendants.**

Civil No. 22-1261 (ADC)

### OPINION AND ORDER

Before the Court are co-defendants, Josefina Amparo De La Fuente-Mundo ("Josefina Amparo De La Fuente"), Alicia De La Fuente-Mundo, and Rosalía De La Fuente-Mundo's (jointly the "De La Fuente defendants") motion for summary judgment, **ECF No. 10**. Co-defendant María Trini Menéndez ("Trini Menéndez") filed an opposition. **ECF Nos. 17, 18, 19**. Plaintiff, the United States of America ("government" or "plaintiff"), filed a memorandum in opposition to De La Fuentes's motion for summary judgment. **ECF Nos. 20, 21.**

For the reasons discussed herein, the motion for summary judgment at **ECF No. 10** is **DENIED**.

**I.  PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff filed the instant action to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act ("FHA") of 1988, 42 U.S.C. § 3601, *et seq.*, on

behalf of Karla Mar Fernández-Montero ("Fernández-Montero") and Ricardo Medina-Medina (collectively, "Complainants"). **ECF No. 1**.

According to the complaint, the De La Fuente defendants are the owners of a three-story, four-unit apartment building[1] in San Juan, Puerto Rico (the "property"). **ECF No. 1**. Josefina Amparo De La Fuente, who manages the property, hired Trini Menéndez as their real estate agent. *Id*. Trini Menéndez posted classified ads offering an apartment unit at the top floor of the building for lease. Complainants responded to the ad and visited the property shortly thereafter. Trini Menéndez showed them the apartment. That same day, Complainants announced their interest in renting the apartment.

The complaint further alleges that the De La Fuentes and Trini Menéndez refused to allow Complainants, one of whom is legally blind and has a disability, to rent the three-bedroom apartment because of their service dog (herein after, the "denial"). *Id*.[2] Plaintiff claims defendants discriminated because of Fernández-Montero's disability "by refusing to make reasonable accommodations in rules, policies, practices or services when such accommodations were necessary to afford a person an equal opportunity to use and enjoy a dwelling," in violation of the FHA, 42 U.S.C. § 3604(f)(1), (f)(2) and (f)(3)(B). **ECF No. 1** at 2.

---

[1] There is no controversy that the property at issue constitutes a "dwelling" for statutory purposes. See 42 U.S.C. § 3602(b).

[2] FHA´s protection extends to both Complainants given that discrimination is prohibited because of a handicap of the renter or "(A) […] (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter." 42 U.S.C. § 3604(f)(1), (2).

Trini Menéndez filed an answer to the complaint. **ECF No. 5**. The De La Fuente defendants moved for summary judgment. **ECF No. 10**. Trini Menéndez opposes the De la Fuente defendants' motion for summary judgment. **ECF Nos. 17, 18, 19**. Plaintiff also filed a memorandum in opposition to the motion for summary judgment. **ECF Nos. 20, 21**. Replies[3] and sur-replies followed. **ECF Nos. 22, 29, 30, 31**.

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact meets the material bar if it has the potential to affect the outcome of the case in light of the applicable law. *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Calero-Cerezo v. United States Dept. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004); *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83 (1st Cir. 2016) (citations omitted); *see* Fed. R. Civ. P. 56(a). Although the Court states the facts in the light most favorable to the party against whom summary judgment is entered, the Court is still required "to determine whether either of the parties deserves judgment as a matter of law on facts that

---

[3] The De La Fuente defendants did not move for leave to reply to Trini Menéndez's opposition filings at **ECF Nos. 17, 18, 19**. Moreover, the De La Fuente defendants' motion for leave to reply to plaintiff's opposition fell beyond L. Civ. R. 7(c)'s 7-day window to move for leave to reply to Trini Menéndez's opposition, which was filed two days before plaintiff's.

are not disputed." *Adria Int'l Grp., Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001) (citation omitted).

In order to defeat a properly supported motion for summary judgment, the non-moving party must set forth facts showing that there is a genuine dispute for trial. *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011). "When a non-moving party fails to file a timely opposition to an adversary's motion for summary judgment, the court may consider the summary judgment motion unopposed, and take as uncontested all evidence presented with that motion." *Pérez-Cordero v. Wal-Mart Puerto Rico*, 440 F.3d 531, 533–34 (1st Cir. 2006) (citing *NEPSK, Inc. v. Houlton*, 283 F.3d 1, 7–8 (1st Cir. 2002)). The Court must still scrutinize the summary judgment motion under the terms of the Federal Rules of Civil Procedure but, "[i]n most cases, a party's failure to oppose summary judgment is fatal to its case." *Id.* at 534.

L. Civ. R. 56(c) states, in pertinent part, "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts." *Id*. Moreover, L. Civ. R. 56(e) provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. . . The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced by the parties' separate statement of facts."

## III. DISCUSSION[4]

### A. The De La Fuente defendants' grounds for summary judgment

From the outset, the Court notes that the motion for summary judgment, **ECF No. 10**, and the statement of uncontested material facts proposed by the De La Fuente defendants, **ECF No. 10-2**, rely on a single document. Namely, extracts of Josefina Amparo De La Fuente's "investigative deposition"[5] testimony. **ECF No. 10-1**. The De La Fuente defendants did no care to explain to the Court in their moving papers the nature of this "investigative deposition," which is part of the proceedings at the US Department of Housing and Urban Development ("HUD"), Office of Fair Housing and Equal Opportunity, Case Number: 02-21-7355-8. As explained herein, these proceedings were initiated by Complainants prior to the filing of the instant complaint. See **ECF No. 20**.

As to the legal grounds for summary judgment, the De La Fuente defendants do not quarrel with the fact that the complaint alleges a statutory violation for failure to reasonably accommodate. However, they contend that the complaint fails to state whether the discrimination is based on "disparate treatment" or "disparate impact." **ECF No. 10** at 6. They argue, in any case, that neither the government nor the Complainants can offer direct evidence

---

[4] Because the facts of this case are not voluminous, the Court will consolidate the factual findings with the discussion. Aside from those specifically identified herein, the Court draws the facts from the well-pleaded facts of the complaint and the statements of proposed facts submitted by the parties that comply with Local Rule 56. *See CMI Capital Market Inv. v. González-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). Although the Court reviewed every statement submitted by the parties, it will only consider and include in this Opinion & Order those facts that are material for purposes of summary judgment as mandated by Fed. R. Civ. P. 56.

of discriminatory intent for any FHA purported violation. Thus, they think the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)'s burden-shifting scheme comes into play.

Under that reasoning, the De La Fuente defendants argue that the initial denial of Complainants' offer to rent out the apartment with their service animal was based on no-discriminatory reasons: a "no-pet" policy based on the fact that the stairs leading to the apartment were in "poor" conditions. *Id.*, at 8. They also allege[6] that neither the real estate agent nor Josefina Amparo De La Fuente understood what a service dog "legal… requirements" were. *Id*. In addition, the De La Fuente defendants inform that the apartment was ultimately rented to another person with disabilities and a service animal. *Id.*, at 9. Thus, they contend, summary judgment is proper because the government cannot prove discrimination. *Id.*, at 10.

Finally, because they eventually offered the apartment to Complainants, the De La Fuente defendants understand they survive any reasonable accommodation claim under FHA. *Id*. Their "course-correction[7] was not a half- or empty gesture by any means[,]" instead, they "reserved… [the apartment] for two to three weeks, to afford them an opportunity to answer whether they would rent the unit." *Id.*, at 11. Therefore, in their opinion, they did not fail to accommodate or otherwise discriminate against Complainants because of a disability.

---

[6] To be perfectly clear, the Court uses the term "allegation" in a relaxed sense to refer to arguments and factual propositions in the summary judgment context. Fed. R. Civ. P. 56. The De La Fuente defendants have not filed an answer to the complaint.

[7] Admission which necessarily concedes, even if implicitly, that a denial of reasonable accommodation and tenancy did occur in the first place.

In its response, plaintiff deems superfluous any discussion about disparate treatment or impact since the complain seeks liability for failure to accommodate. **ECF No. 20** at 15. The government also points out that the De La Fuente defendants did not contest that Complainants "requested to keep their mobility dog or that such a request was reasonable, but outlandishly challenge only whether Defendants actually refused the request." **ECF No. 20** at 2. Nor did the De La Fuente defendants challenge any other element required for a finding of liability under the FHA for failure to accommodate tenant's disabilities. Namely, as conceded by the De La Fuente defendants, a plaintiff "needs to prove that: (1) Fernández is a person with disability;" that "(2) [d]efendants knew or should have known about Fernández's disability;" that the "(3)… service dog is reasonable and necessary to afford her an equal opportunity to use and enjoy" tenancy, and that "(4) [d]efendants nonetheless refused to provide a reasonable accommodation." **ECF No. 10** at 10 (quoting *Castillo Condo. Ass'n v. U.S. Dep't of Housing & Urban Dev.*, 821 F.3d 92, 98 (1st Cir. 2016) (cleaned up)).

Indeed, a careful review of their summary judgment filings shows that the De La Fuente defendants' motion for summary judgment at **ECF No. 10** only addressed the fourth factor, (i.e. the refusal to provide reasonable accommodation) and they did so under a very specific challenge: that they did not refuse the accommodation. *Id*.

Appraised by plaintiff of the very limited scope of their motions for summary judgment, the De La Fuente defendants raised several new challenges to the government's case via reply. **ECF No. 30**. To wit, inter alia, they asserted new theories including that Complainants do no

need the "service dog" (having alternate means of navigation such as walking with her cane), *id.*, at 3-4., and that they did not know the extent of the disability, and, therefore, they lacked requisite knowledge, *id.*, at 3-6.

However, these arguments are waived and will not be entertained via reply. *See Southwire Co. v. Ramallo Bros. Printing, Inc.*, 540 F.Supp.2d 307, n.5 (D.P.R. 2008)("To the extent that [movant] address this issue in its reply, it does so too late."); *García-Fernández v. Global Capital Markets*, Inc., 2010 WL 11545619, at *3 (D.P.R., 2010)("Magistrate did not err in finding that defendants were precluded from raising res judicata arguments for the first time in its reply brief."); *Elías Sánchez-Sifonte, et al, v. Josue Fonseca, et al*, Civil No. 22-1444 (RAM), 2023 WL 5753677, at n.10 (D.P.R., 2023)(slip copy)("[the argument] was not raised in Defendants' *Motion* and is thus waived.").

The Court's local rules strictly limit the content of a reply memorandum to new matters raised in the objection or opposing memorandum. L. Civ. R. 7.1(c). Even the statement of material facts must be limited "to any additional fact submitted by the opposing party." L. Civ. R. 56(d). Pointing out what the De La Fuente defendants failed to challenge (like the government did in its opposition) cannot be construed as a "new matter," let alone can it open the door for new arguments in reply.

Accordingly, the De La Fuente defendants' new challenges to the complaint raised in their reply at **ECF No. 30** are **DENIED**.

  **B.**  **The De La Fuentes defendants are not entitled to summary judgment**

The De La Fuente defendants' argument for summary judgment is unavailing. As explained before, their request hinges on the contention that they did not actually deny Complainants the lease, ergo, they did not discriminate against Complainants due to their disability. **ECF No. 10** at 10. Instead, they would have the Court think that they did accommodate Complainants because "[a]s soon as Josefina herself understood" the "legal ramifications of denying… this accommodation" she immediately instructed the realtor to offer the unit to Complainants and "stopped all showings" of the apartment. *Id*., at 10-11.

This contention is factually inaccurate, at least for present purposes under Fed. R. Civ. P. 56. Pursuant to the record developed so far, the Court finds that Josefina Amparo De La Fuente owns the property together with her two siblings, Rosalía and Alicia De La Fuente-Mundo. **ECF No. 10-2** at 1; **ECF No. 20** at 3. As the manager and decision maker[8] of the property, she hired Trini Menéndez. *Id*. After being retained as a real estate agent, Trini Menéndez posted a listing of the unit's vacancy on October 1, 2020. **ECF No. 10-2** at 2-3; **ECF No. 21** at 4; **ECF No. 21-17** at 3. The original ad included no mention of the "no-pet" policy. *Id*.[9] Complainants reached out to

---

[8] The fact that Josefina Amparo De La Fuente had authority to deny or rent the apartment is undisputed.

[9] The Court notes that only co-defendant Trini Menéndez fails to explicitly accept that the original listing that was posted under her name did not mention the "no-pet" policy even though subsequent ads did include the caveat. *Id*. Resorting to ambiguous language such as "[Trini] Menéndez did include in the classified as that no pets were allowed[,]" (**ECF No. 18** at 1) and only submitting one of the ads in support is certainly suspicious. On the other hand, co-defendant Josefina Amparo De La Fuente stated she did not know why the realtor left that information out. **ECF No. 10-2** at 2. Moreover, the record shows declarations by Ricardo Medina-Medina, **ECF No. 21-18** at 2, and HUD's Equal Opportunity Specialist, Néstor Allende-Asparo, both testifying the original ad did not include the "no-pet" policy. **ECF No. 20-17** at 2. Because this is only a tangential issue, the Court need not deal with it at this stage.

**Civil No. 22-1261 (ADC)**                                                                                             **Page 10**

Trini Menéndez and eventually toured the property on October 11, 2020. **ECF No. 10-2** at 3; **ECF No. 21** at 5.

As soon as they finished the tour of the property on October 11, 2020, Complainants informed their interest in securing the lease. **ECF No. 21** at 10; **ECF No. 19** at 2.[10] They also informed that Complainant Fernández-Montero had a service animal due to her disability. *Id*. However, their request was denied because of the owner's "no-pet" policy. *Id*. That same day, pursuant to Complainants' insistence on their statutory right to obtain accommodation due to their disability, Trini Menéndez talked over the phone with Josefina Amparo De La Fuente (who was not present during Complainants visit) to discuss the request for accommodation. **ECF No. 10-2** at 3, **ECF No. 10** at 4; **ECF No. 21** at 10. Although the content and extent of their conversation is not clear at this stage, the fact remains that Trini Menéndez knew what a service animal was and the "accommodation duties to a tenant with a service dog… **and so told** Josefina [Amparo] De La Fuente." **ECF No. 19** at 2-3; **ECF No. 21** at 11(emphasis added).[11]

---

[10] In their response to this proposed fact, the De La Fuente defendants simply denied it by citing to Josefina Amparo De La Fuente's deposition testimony, *see* **ECF No. 30** at 9, and apparently clarifying (because the objection does not say as much) that as Complainants were leaving the property, they informed Trini Menéndez of their service dog. *Id*. Yet, Josefina Amparo De La Fuente was not present during the tour.

[11] Via reply, **ECF No. 30** at 10, the De La Fuente defendants "denied" plaintiff's proposed statement of fact number 43 ("[…] Medina texted Menéndez to inquire whether she reached out to Josefina about their service dog. Menéndez responded that she did, later stating to the HUD investigator that it was to no avail") claiming it is hearsay. *See* **ECF No. 30** at 10. As with other objections by the De La Fuentes, this objection is frivolous. It is an opposing party's statement. Fed. R. Evid. 801(d)(2)(D).

Trini Menéndez confirmed to Complainants via text message that she spoke on October 11, 2020 with Josefina Amparo De La Fuente about the accommodation. **ECF No. 21** at 10, **ECF No. 30** at 10. Instead of offering the apartment to Complainants or some kind arrangement for accommodation over the not-pets rule, Trini Menéndez only offered to show Complainants another property (in a different building) that was "pet-friendly." *Id*.

Complainants thus filed a complaint with HUD on October 27, 2020 against Trini Menéndez, which was later amended to include the De La Fuente defendants. **ECF No. 21** at 11-12. Sometime after, defendants reconsidered their denial and offered the apartment to Complainants. *Id*; **ECF No. 10** at 8 ("but which discrepancies [d]efendants… corrected"). However, by the time defendants reconsidered their position, Complainants had entered into a contract to rent another property. **ECF No. 21** at 11.[12]

Via reply, the De La Fuente defendants repeatedly claim that Trini Menéndez "did not inform [Complainants] that she would not rent to them, but that she would have to consult the matter with Josefina." **ECF No. 30** at 6, 7, 11. Under this particular representation included in the reply, the De La Fuente defendants ask the Court to find that there was never an "outright refusal" but rather an "interactive process." *Id*., at 6-7. Yet other portions of her deposition testimony would suggest otherwise. To wit, at page 64 of the deposition transcript (which the

---

[12] The De La Fuente defendants denied only the dates included in plaintiff's proposed fact number 47 and, thus, failed to show that a genuine issue of fact exists as to this particular proposed finding. **ECF No. 30** at 12. In any event, as discussed elsewhere in this Opinion and Order, the De La Fuente defendants' timeline is in conflict with the record and evidence submitted by all other parties, including the admissions co-defendant Trini Menéndez.

De La Fuente defendants omitted), Josefina Amparo De La Fuente testified that Trini Menéndez "told [Complainants] that she **could not rent it to them** because she needed to consult with me[…]" **ECF No. 21-13** at 65 (emphasis added). Which, contrary to their argument, is a denial.

Moreover, Josefina Amparo De La Fuente admitted that "Trini [Menéndez] let them know that I didn't want any pets there, that I rented out the apartments without dogs. And that was the conclusion of that[…]" **ECF No. 10-1** at 11. To boot, she stated:

> "Q. During the first call, what did you instruct [Trini Menéndez] to do regarding [Complainants]?
>
> A. I told her that we don't rent our apartments to people with pets.
>
> Q. And did she explain to you that was not a pet?
>
> A. She mentioned it was a service dog, but she didn't know what that entailed. She -- she -- she didn't have -- and I knew even less, so.

*Id.*, at 13. *See also* **ECF No. 10** at 8 ("any initial discrepancies between Defendants and [Complainants] due to [their] service dog were based on Defendants' simple inadvertence [.]");[13] **ECF No. 21** at 11; **ECF No. 19** at 2; **ECF No. 30** at 5. Based on these facts, the De La Fuente defendants are not entitled to summary judgment.

Under FHA, it is "unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling' on the basis of that person's handicap." *Del Río Gordo v. Hosp.*

---

[13] The "inadvertence" portion of the testimony is in direct and open contrast to Trini Menéndez's testimony, who, at all times relevant, was the De la Fuente defendants' agent or representative for FHA purposes. *See* **ECF No. 19** at 2 ("Menéndez knew the obligation to accommodate a service dog and told so to Josefina De La Fuente.").

*Ryder Meml. Inc.*, 2018 WL 542222, at *1 (D.P.R. 2018)(quoting 42 U.S.C. § 3604(f)(2)). Disability discrimination may include the refusal to make reasonable accommodations to policies as necessary to afford a person with disabilities the opportunity to use and enjoy a dwelling. *Id.*, § 3604(f)(3).

Accordingly, the facts and admissions presented to the Court thus far indicate that, contrary to the De La Fuentes defendants' theory, they did refuse accommodation to Complainants. It was only after learning the "legal connotations" of their violation to FHA that they then "corrected course." Yet, under the FHA "a violation occurs when the disabled resident is first denied a reasonable accommodation, irrespective of the remedies granted in subsequent proceedings." *Bryant Woods Inn, Inc. v. Howard Cnty., Md.*, 124 F.3d 597, 602 (4th Cir. 1997). Moreover, and of particular relevance here, it is the party seeking summary judgment that bears the initial burden of informing the court of the basis for its motion. *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Thompson v. Gold Medal Bakery, Inc.*, 989 F.3d 135, 141 (1st Cir. 2021)(courts construe the record in the light most favorable to the nonmoving party).[14]

Accordingly, the De La Fuente defendants' only hope resides in their timeline calculations, which, at best, is heavily controverted. To wit, the parties dispute the date when Trini Menéndez's second phone call to Josefina Amparo De La Fuente took place. The

---

[14] Not only is the evidence gathered so far insufficient to grant movants Fed. R. Civ. P. 56 relief, but it would also cut against them. However, because plaintiff did not move for summary judgment or cross moved for such relief, the Court need not decided as much at this juncture.

importance of that fact being that defendants claim it was at that time that Josefina Amparo De La Fuente instructed the realtor to offer the apartment to Complainants. This "course correction," the De La Fuente defendants argue, suffices to meet FHA's accommodation requirements. **ECF No. 30** at 7 ("the week it took… to consider [the request for accommodation] is not an undue delay occurred through which the Court may infer that the De La Fuente defendants tacitly denied the request.").

Although the evidence submitted thus far for summary judgment purposes shows that defendants outright denied Complainants reasonable accommodation over the no-pet rule, the De La Fuente defendants suggest that their week-late accommodation offer comports with the law. Even if defendants could actually support this contention, as a matter of law, failure to accommodate under the FHA could still "be inferred" in the absence of an explicit denial. *Rivera v. Mora Development Corporation*, 624 F. Supp.3d 80, 90 (D.P.R. 2022)(collecting cases).

However, the Court cannot draw any legal conclusions on this argument for now. Indeed, the factual foundations for this proposition are certainly not undisputed. Josefina Amparo De La Fuente testified during her HUD-*subpoena* deposition that Trini Menéndez reached out to her to again about a week later. **ECF Nos. 10-1** at 13, **30** at 5. Complainants, HUD's officer, Trini Menéndez, and plaintiff seem to agree that this conversation between Trini Menéndez and Josefina Amparo De La Fuente took place not "a week," but several weeks after the initial denial and only after Complainants filed the HUD charge and HUD's officer initiated mandatory conciliation proceedings. *See* **ECF No. 21-6** at 3 (November 19, 2020 letter by Trini

Menéndez, through legal counsel, informing they spoke with Josefina Amparo De La Fuente and that she authorized them to offer the apartment to Complainants); **ECF No. 21-8** at 3-4 (Trini Menéndez's statement under penalty of perjury stating that after receiving the HUD's complaint against her, she reached out to the property's owner and manager, who finally agreed to waive the no-pet rule); **ECF No. 21-17** HUD's Equal Opportunity Specialist, declaration under penalty of perjury (declaring that the same day he interviewed Trini Menéndez, November 19, 2020, the realtor called the property owner and came back with an offer to rent the apartment to Complainants); **ECF No. 21-18** (Complainant's declaration under penalty of perjury). Therefore, the fact proposed by Josefina Amparo De La Fuente, material only to defendants' last resort theory, is disputed at this pre-discovery stage of the case.

For the same reasons (controversy as to the date in which defendants made an offer), the government's argument to strike from the record all evidence related to the "conciliation"[15] proceedings is premature. *See* 42 U.S.C. § 3610(d)(1)("[n]othing said or done in the course of conciliation under this subchapter may be made public or used as evidence in a subsequent proceeding under this subchapter without the written consent of the persons concerned."). Whether defendants eventually rely on inadmissible communications generated during HUD's conciliation proceedings will be addressed in due course. For now, because of the reasons stated above, the Court need not cross that bridge. But even though it need not cross it now, the Court

---

[15] Generally, HUD engages in a conciliation process to attempt to settle the dispute between the parties without litigation. See 42 U.S.C. § 3610(b)(1)-(4); 24 C.F.R. § 103.300.

won't burn it either. Plaintiff's request to strike from the record all references to communications issued during conciliation proceedings, at **ECF No. 20**, is denied without prejudice to its reassertions when proper.

## VI.    CONCLUSION

In light of all the above, the Court hereby **DENIES** the De La Fuente defendants' motion for summary judgment at **ECF No. 10**. The De La Fuente defendants are granted 15 days to submit their responsive pleading.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 28th day of September, 2023.

                                                                    **S/AIDA M. DELGADO-COLÓN**
                                                                    **United States District Judge**